# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 5498 | DATE | Dec. 21, 2004 |
| CASE TITLE | Booker Briggs, et al  v  Provident Bank, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendants' motion for summary judgment is granted as to statutory damages and Booker Briggs. Defendants' motion for summary judgment is denied as to attorneys' fees and plaintiffs' right to rescind. Plaintiffs' motion for summary judgment is denied as to plaintiffs' right to rescind and statutory damages. Status hearing date of 1/5/05 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 27 2004 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | rbf | 58 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| GS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
DEC 2 7 2004

BOOKER BRIGGS and MICHAEL BRIGGS, )
)
Plaintiffs, )
) No. 03 C 549
v. )
) Judge Robert W. Gettleman
PROVIDENT BANK and GREENWICH )
CAPITAL FINANCIAL PRODUCTS, INC., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Booker Briggs ("Booker") and Michael Briggs ("Michael") filed a one-count second amended complaint to rescind a $52,500 mortgage loan and to recover damages, including statutory damages and attorneys' fees, for violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. Part 226. Defendants Provident Bank and Greenwich Capital Financial Products, Inc. filed a joint motion for summary judgment pursuant to Fed. R. Civ. P. 56.[1] Defendants argue that plaintiffs are not entitled to rescind the loan transaction, that as assignees defendants are not liable for statutory damages or attorneys' fees, and that Booker is not entitled to TILA protections because the transaction was exempt as to him. Plaintiffs filed a cross-motion for summary judgment, arguing that they had the right to rescind the loan because the notice of right to cancel was not filled out, in violation of TILA disclosure requirements. Plaintiffs also argue that they are entitled to statutory damages and attorneys' fees.

For the reasons stated herein, defendants' motion for summary judgment is granted as to statutory damages and Booker Briggs. Defendants' motion for summary judgment is denied as to

---

[1]Defendant Litton was dismissed without prejudice on February 26, 2004. Does 1-5 have also been dismissed.

1



attorneys' fees and plaintiffs' right to rescind. Plaintiffs' motion for summary judgment is denied as to plaintiffs' right to rescind and statutory damages. Plaintiffs' motion for summary judgment is granted as to attorneys' fees.

Defendant Provident has filed a separate claim, Case No. 04 C 4428, against Lawyer's Title Company ("Lawyer's Title"), the title company involved in the loan transaction at issue. Lawyer's Title's motion to dismiss is pending. Provident's three-count complaint against Lawyer's Title states claims for breach of contract, breach of closing instructions, and indemnity.

## FACTS[2]

Plaintiffs are brothers who reside at 9537 S. Winston Avenue in Chicago, Illinois (the "Property"). Plaintiffs claim that they own the Property. On March 15, 2001, plaintiffs entered into a mortgage loan (the "Loan" or "Mortgage") with Pinnfund, USA, Inc. ("Pinnfund"), which is now defunct. The closing took place at the Briggs's home on March 15, 2001, and was conducted by Ian Tepper ("Tepper"), a mortgage broker from Wall Street Mortgage ("Wall Street"). Plaintiffs allege that at the closing Tepper ordered Booker and Michael to sign a set of loan documents, but not to put any dates on them. According to plaintiffs, Tepper explained that the dates would be filled in at a later time. Plaintiffs claim that Tepper did not explain the notice of right to cancel ("Notice"), or instruct plaintiffs to read the Notice.

Plaintiffs allege that Tepper did not give plaintiffs copies of any documents on March 15, 2001, but took all of the documents with him. Defendants allege that plaintiffs received copies of all of the documents, with the exception of the mortgage note, on March 15, 2001, and that plaintiffs signed a certification that they received copies of the documents. Plaintiffs allege that they did not receive any copies of the loan documents until April or May 2001, when they were mailed blank copies of the following: (1) Note; (2) HUD-1 Settlement Statement; (3) Federal Truth in Lending Disclosure Statement; (4) Notice of Right to Cancel; and (5) Good Faith

---

[2]Unless otherwise noted, the following facts, taken from the parties' L. R. 56.1 Statements and attached exhibits, are not in dispute.

2

Estimate of Settlement Charges. Plaintiffs contend that all of the documents they received were unsigned and undated, and that the documents, including the Notice, in defendants' loan file are fraudulent and forged.

Jean Depkon ("Depkon") was the escrow supervisor with Lawyer's Title. Depkon reviewed the Loan documents after they were returned to Lawyer's Title by Tepper following the closing. The Loan documents produced during discovery from the Lawyer's Title file regarding the Loan contained a copy of the Notice that did not contain a date of transaction or the date of the end of the rescission period, but was signed by plaintiffs.

Prior to the closing, Pinnfund had entered into a warehouse loan agreement with Provident ("Warehouse Agreement"), a bank with offices in Cincinnati, Ohio. Pursuant to the Warehouse Agreement, Provident granted Pinnfund a warehouse line of credit for the purpose of funding residential mortgage loans. Provident advanced funds on the warehouse line of credit on behalf of Pinnfund to fund the Loan, which was pledged by Pinnfund as security for repayment of the warehouse line advance.

Pinnfund was subsequently placed into receivership by court order, pursuant to a petition filed by the U.S. Securities and Exchange Commission, which sought and obtained temporary restraining orders and asset freezes against Pinnfund and related entities. The temporary restraining order against Pinnfund was entered on March 21, 2001, six days after the Loan was entered into. Pinnfund was placed into involuntary bankruptcy by its creditors by a petition filed on April 2, 2001. Because it was placed in receivership, Pinnfund breached the repayment terms under the Warehouse Agreement, and Provident became the assignee of the Loan.

When it took the Loan from Pinnfund Provident received a loan file for the Loan that contains numerous documents, including a copy of the Notice. The copy of the Notice in Provident's loan file produced during discovery is completely filled out, including the date of the transaction, the last day to cancel, and an acknowledgment signed by Michael and Booker that they received two copies of the Notice. Provident subsequently assigned the Loan to Greenwich,

3

a Delaware corporation. Provident asserts that it is in the process of repurchasing the Loan from Greenwich. On or about July 16, 2003, plaintiffs' attorney mailed a rescission demand and notice of attorney's lien to Provident. Provident responded by a letter dated July 25, 2003, stating that the file contained a signed copy of the Notice. Plaintiffs contend that Provident's files contain fraudulent and forged documents, including the Notice. The loan has not been rescinded.

Plaintiffs claim that all of the proceeds from the Loan were disbursed for home remodeling, but defendants argue that only portions were used for home remodeling. Booker testified at his deposition that he did not receive any cash back from the Loan. From an examination of the documents, it appears that some of the loan proceeds were used to refinance an earlier loan. Michael's deposition testimony suggests that to finance earlier home repairs his mother had previously taken out a loan from Associates, which had a $20,000 unpaid balance at the time of the Loan. The total value of the Loan is $52,500, at an interest rate of 10.47%. On the HUD-1 settlement statement, $19,992.01 is listed as a "payoff to the Associates," and $26,139.05 is listed as the "gross amount due from borrower." Plaintiffs' Uniform Residential Loan Application also lists a $20,000 liability to Associates.

Plaintiffs characterize Booker and Michael as owners of the Property, a characterization defendants do not challenge. According to the records from the Cook County Recorder's Office, the last deed of record for the Property is a quit claim deed from Janie Briggs, plaintiffs' mother, to Janie Briggs and Michael J. Briggs, in joint tenancy, dated May 30, 1996. Booker testified at his deposition that prior to the Loan his brother, Michael, and his mother owned the property together:

> "Q. Okay. When [your parents] passed away, did you become owner of the property?
> A. Well, my father passed away back in '79; and my mother, she passed away in '99, but my mother and my brother, Michael Briggs, was [sic] the owner at the time.
> Q. Okay. How did you get ownership?
> A. By having it refinanced, refinanced in my name and Michael's name."

There is no evidence in the record of Booker's ownership of the Property, either prior or

4

subsequent to the Loan.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## DISCUSSION

Defendants have moved for summary judgment, arguing that plaintiffs have no right to rescind, or in the alternative that defendants are not liable for statutory damages and attorneys' fees. Plaintiffs' cross-motion for summary judgement claims that defendants committed a violation of TILA by refusing to honor plaintiffs' right of rescission, and that plaintiffs are entitled to statutory damages and attorneys' fees. The court must first determine whether

summary judgment is appropriate on the issue of plaintiffs' right to rescission, and then determine what liability defendants bear for any refusal to honor plaintiffs' request for rescission.

I. **Right of rescission**

TILA "has the broad purpose of promoting 'informed use of credit' by assuring 'meaningful disclosure of credit terms to consumers.'" Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559 (1980)(quoting 15 U.S.C. § 1601). Congress has delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce and credit. Id. at 559-60. Pursuant to that authority the Federal Reserve Board issued a set of regulations (12 C.F.R. Part 226) commonly known as Reg. Z, which sets forth detailed disclosure requirements to be made to consumers.

TILA and Reg. Z extend special protections to homeowners, including a right of rescission for any loan transaction in which the borrower's principal dwelling is used as security. See 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23. Under TILA, a creditor is required to "deliver two copies of the notice of the right to rescind to each consumer entitled to the right to rescind." 12 C.F.R. § 226.23(b)(1). The notice "shall be on a separate document that identifies the transaction" and shall "clearly and conspicuously" disclose the consumer's right to rescind the transaction. Id. If proper disclosures are made, the homeowner's rescission period ends at "midnight of the third business day following consummation [of the loan], delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation. See 12 C.F.R. § 226.23(a)(3). "Any consumer who had the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c).

The failure to provide two completed copies of the notice of the right to rescind is a basis for rescission. 12 C.F.R. § 226.23(b)(1). Plaintiffs assert that they are entitled to rescind their loan because they were not given copies of the Notice at the closing, and that the copies that were

6

mailed to them several months later were blank, missing the dates of the transaction and the end of the rescission period, and unsigned. In support of their claims, plaintiffs offer the deposition testimony of Michael and Booker, a blank copy of the Notice that they claim was sent to Michael and Booker, and a copy of the Notice from Lawyer's Title that does not contain the date of the transaction or the end of the rescission period, although it is signed by plaintiffs. Defendants, however, deny that plaintiffs received blank forms, and support that denial with a copy of the Notice from defendants' loan file that is properly completed and signed by Michael and Booker, including a written acknowledgment by plaintiffs that they received two copies of the Notice.

For either side to succeed in their cross-motions for summary judgment, plaintiffs or defendants must establish that there is no triable issue of material fact whether plaintiffs timely received the properly completed Notice that is in defendants' file. Although defendants do not raise this argument, TILA has a provision that creates a rebuttable presumption of delivery of required documents when there is "written acknowledgment of receipt of any disclosures required." 15 U.S.C. § 1635(c). While this provision was likely enacted for the benefit of borrowers, it does not necessarily preclude reliance by creditors and assignees. Payton v. New Century Mortgage Corp., 2003 WL 22349118, at *3 (N.D. Ill. Oct. 14, 2003). In the instant case, the copy of the Notice in defendants' file, which contains a written acknowledgment allegedly by plaintiffs of receipt, creates a presumption of receipt. Plaintiffs suggest that their deposition testimony and the blank copy of the Notice produced by plaintiffs are sufficient to rebut the presumption and justify summary judgment in their favor. The court disagrees, and finds that a borrower's testimony that he did not receive the proper copies of the right to rescind disclosures required by TILA creates a question of fact to be decided at trial.

Accordingly, defendants' motion for summary judgment and plaintiffs' motion for summary judgment are both denied as to plaintiffs' right to rescind.

## II. TILA disclosures to Booker

Defendants argue that Booker was not entitled to TILA protections because the Loan

7

transaction was an exempt transaction as to him. Under TILA, the creditor must "clearly and conspicuously disclose...to any obligor in a transaction subject to this section the rights of the obligor under this section." 15 U.S.C. § 1635(a). Under section 1635(e) of TILA certain transactions are exempt from the right of rescission and disclosure requirements of section 1635, including a residential mortgage transaction as defined in section 1602(w). Section 1602(w) defines a residential mortgage transaction as one in which a "mortgage...is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). Defendants contend that Booker did not own the Property prior to the Loan, and was therefore using the financing provided by the Loan to acquire ownership of the property.

Questions abound about Booker's putative ownership of the Property, both before and after the Loan. Booker's deposition testimony and the Cook County records indicate that Booker did not own the Property at the time of the Loan transaction. Plaintiffs admit that Booker did not own the Property prior to the Loan and characterize him as a current owner, but argue that there is no evidence that Booker used any portion of the proceeds from the Loan to purchase the Property. Booker testified at his deposition that he gained ownership in the Property through the Loan, and plaintiffs' briefs characterize Booker as currently owning the property. Neither side, however, explains how a mortgage confers an ownership interest in a co-signer of the mortgage, and defendants do not explain how Booker allegedly used proceeds of the Loan to become an owner. Further, the court has not been provided with a record of a transfer of title or other deed subsequent to the quit claim deed from plaintiffs' mother to herself and Michael Briggs recorded in 1996, or any other evidence that Booker was or is an owner of the Property.

While the record is far from clear regarding if and when Booker owned the Property, under either scenario - Booker is not an owner or acquired ownership through the Loan - Booker did not have the right to rescind and was not entitled to TILA disclosures for homeowners. Although defendants do not raise this argument, plaintiffs admit that Booker was not the owner

of the Property at the time of the Loan in 2001. Ownership of the property to which a creditor is given a security interest is a prerequisite to TILA's right of rescission disclosure requirements, which are explicitly premised on home ownership. See 12 C.F.R. § 226.23(a)("consumer whose *ownership interest...*")(emphasis added); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 900 (N.D. Ill. 2000)(finding that if the plaintiff had ownership in home, she had the right to rescind and the right to TILA disclosures). The undisputed material facts, however, establish that Booker did not have an ownership interest in the Property prior to the Loan. Additionally, even if Booker became an owner of the Property through the Loan, such as by paying off an earlier debt on the property, the Loan was a "residential mortgage transaction" as to him and thus exempt. See 15 U.S.C. § 1635(e). Issues of fact remain in dispute, but they are not material because the undisputed facts establish that Booker was not entitled to TILA disclosures.

The court agrees with plaintiffs that because Michael was indisputably entitled to TILA disclosures, Michael still has the right to seek rescission of the Loan, which would rescind the Loan as to Michael and Booker. "When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers." 12 C.F.R. § 226.23(a)(4). This provision, however, does not entitle Booker to damages. Accordingly, defendants' motion for summary judgment is granted as to all claims for damages by Booker.

## III. Statutory damages[3]

Defendants have moved for summary judgment on plaintiffs' claim that they are entitled to statutory damages pursuant to § 1640(a) of TILA, which establishes civil liability for creditors. Defendants argue that even if plaintiffs have a right to rescind, defendants are not liable for

---

[3]The court agrees with defendants' argument that they are not automatically liable for failing to comply with the rescission demand. Plaintiffs concede that rescission under TILA is not automatic if the lender disputes the borrower's claim that rescission is warranted. Fairbanks Capital Corp. v. Jenkins, 225 F. Supp. 2d. 910, 916 n.2, citing Large v. Conseco Fin. Serving Corp., 292 F.3d 49, 55 (1st Cir. 2002). The questions of whether rescission is appropriate, and whether defendants are liable for failure to comply with the rescission demand, will be determined at a later stage in this litigation.

9

statutory damages because they are assignees, not a creditor, and the liability of assignees is limited to instances when the TILA violation is facially apparent. Section 1641, titled "Liability of assignees," specifically limits an assignee's liability. Section 1641(a) states in pertinent part, "Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter...which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action...is brought is apparent on the face of the disclosure statement...." 15 U.S.C. § 1641(a). Section 1641(c), titled "Right of rescission," provides, "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). Plaintiffs read § 1641(c) to allow that any claim for rescission against a creditor, including statutory damages, may be brought against the assignee regardless of the requirement of § 1641(a) that violations be apparent on the face of the disclosure statement.

The Seventh Circuit and numerous courts of this district have repeatedly held that an assignee's liability, including statutory damages, is limited to instances in which the TILA violation is apparent on the face of the documents. See Taylor v. Quality Hyundai, Inc., 150 F. 3d 689, 694 (7th Cir. 1998)("Only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA"); see also Pulphus v. Sullivan, 2004 WL 1588250, at *3 (N.D. Ill. July 15, 2004); Jenkins v. Mercantile Mortgage Co., 231 F. Supp. 2d 737, 746-747 (N.D.Ill. 2002); Herrera v. North & Kimball Group, Inc., 2002 WL 253019, at *3 (N.D.Ill. Feb. 20, 2002); MorEquity, 118 F. Supp. at 900; Furge v. Evergreen Finance Co., 1998 WL 729624, at *2 (N.D.Ill. Oct. 16, 1998). Courts of other districts have reached the same result. See, e.g., Brodo v. Bankers Trust Co., 847 F. Supp. 353, 359 (E.D. Pa. 1994)("Apparently Congress did not wish to impose liability for damages and attorney's fees on an assignee who was not responsible for and who had no notice of TILA disclosure violations at the time of an assignment.").

Plaintiffs attempt to refute the substantial caselaw contrary to their position by citing

10

Judge Kennelly's opinion in Fairbanks Capital Corp. v. Jenkins, 225 F. Supp. 2d 910 (N.D.Ill. 2002)(Fairbanks), for the proposition that an assignee is treated identically to a creditor, including as to liability.[4] Judge Kennelly's opinion "finds itself in respectful disagreement with Brodo," and suggests that the remedies in section 1640(a), including statutory damages, are equally available against assignees as well creditors. Id. at 916. Plaintiffs, however, overstate the holding in Fairbanks. While Judge Kennelly disagreed with the Brodo court's conclusion that rescission is the sole remedy available against an assignee, Judge Kennelly expressly declined to rule on whether statutory damages are a possible remedy, holding only that § 1641 does not provide the *exclusive* remedy. Id. at 917. Further, because the alleged TILA violations in Fairbanks were apparent on the face of the loan documents, Judge Kennelly did not address whether he would reach a different result if the deficient disclosure were not facially apparent to the assignee.

At least two courts in this district have explicitly declined to follow Judge Kennelly's approach, adopted the statutory analysis of Brodo, and held that assignees are not liable for statutory damages if a TILA violation is not apparent on the face of the loan documents. See Walker v. Gateway Financial Corp., 286 F. Supp. 2d. 965, 968-69 (N.D. Ill. 2003)(Shadur, J.); Payton, 2003 WL 22349118, at *7 (Holderman, J.). As plaintiffs' counsel surely knows, because he represented the borrowers in both of these cases, the facts and the plaintiffs' arguments in Walker and Payton are analogous to the facts and arguments in the instant case. Judges Shadur and Holderman each concluded that section 1641(c) of TILA does not specifically provide for statutory damages against an assignee, and that statutory damages cannot be imposed absent clearer congressional direction. As Judge Shadur explains in Walker, the imposition of statutory damages on an assignee "would create an end run around the clear congressional purpose that

---

[4] The court notes that the parties create confusion by generally referring to the opinion by Judge Kennelly in Fairbanks v. Jenkins as "Jenkins" but occasionally providing the citation for Jenkins v. Mercantile Mortage Co., 231 F. Supp. 2d 737 (N.D.Ill. 2002)(Bucklo, J.). The court will refer to Judge Kennelly's opinion as Fairbanks, and Judge Bucklo's opinion as Jenkins.

11

underlies the Section 1641(a) enactment of a statutory equivalent to a bona fide purchaser rule." 286 F. Supp. at 359. This court agrees.

Defendants in the instant case, as assignees, are therefore not liable for statutory damages for the alleged TILA disclosure violation if it was not apparent on the face of the Loan documents when each defendant received the Loan file. The alleged TILA violation here is that plaintiffs did not receive a copy of the Notice, but plaintiffs fail to create a triable issue of fact whether the Loan file received by defendants contained a completed copy of the Notice at the time it was received. Defendants state the following pertinent facts in their L.R. 56.1 statement:

¶14  The loan file contains numerous documents including the Notice of Right to Cancel.
¶15  When Provident Bank received the loan, it was assigned all the loan documents.
¶16  The notice of right to cancel contained in Plaintiffs' loan file provided to Provident Bank was complete and accurate and included, among other things, the date the rescission period expired, March 19, 2001, and the signature of the Plaintiffs.

Although paragraphs 14 through16 of defendants' statement of facts are not models of precision, when read together they state that the Loan file received by Provident from Pinnfund contained a completed copy of the Notice. In support of these statements of fact defendants cite to the completed copy of the Notice in the Loan file and the affidavit of Robert Hardman ("Hardman"), a vice president and recoveries director at Provident, in which Hardman states that Provident received the Loan file from Pinnfund and that the Loan file contains a Notice that is completely filled out.

Plaintiffs offer the identical response to paragraphs 14 through 16 of defendants' 56.1 statement: "Deny. The loan file contains numerous documents including a fraudulent and forged Notice of Right to Cancel which was never received by the Plaintiffs and was in a different form than what the Plaintiffs received by mail in April or May 2001, which is not a loan document." In support of this denial plaintiffs cite to the deposition testimony of Michael and Booker[5] that

---

[5]The court notes that ¶18 of plaintiffs' response to defendants' statement of facts reverses the citation to the depositions attached as exhibits to plaintiffs' response. Booker's deposition is
(continued...)

they received only blank copies of the Notice. Plaintiffs' responses to paragraphs 14 through 16 are improper as to each statement of fact because although they "deny" the allegation, the citations to the record do not support the denial as required. The court therefore treats the facts stated by defendants as admitted. See L.R. 56.1(a) & (b)(3)(B); McGuire v. United Parcel Service, 152 F.3d 673, 675 (7th Cir. 1998)("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."). Moreover, plaintiffs' responses miss the point. The issue with respect to damages against defendants is not whether the file contains forged documents, but whether a TILA violation was apparent on the face of the documents received by the assignee. In the instant case, as discussed above, plaintiffs have failed properly to deny that the Notice was complete when Provident received the file.

In addition to plaintiffs' improper responses, plaintiffs' own arguments in their briefs establish that there is no contested fact relevant to the documents received by defendants. First, plaintiffs do not dispute that defendants received a completed Notice, but instead focus on their legal argument, rejected by this court, that an assignee's liability is not limited to facially apparent TILA violations. Second, plaintiffs claim that the documents produced by defendants during discovery were "fraudulently forged well after the closing," but argue specifically that Pinnfund - not defendants - was responsible for the forgery. Plaintiffs allege in their reply brief that "Pinnfund's agent filled in the relevant dates, which represents the copy located in the loan file later assigned to Provident and produced during this litigation" and that "Pinnfund later mailed Plaintiffs a set of blank documents." As discussed above, the court's analysis of defendants' liability for damages as assignees turns on the documents received by defendants, not on the documents received by plaintiffs. Plaintiffs have not taken the deposition of any individual at Pinnfund, Provident or Greenwich, and offer no evidence to refute defendants'

---

⁵(...continued)
attached as Ex. A and Michael's deposition is attached as Ex. B.

13

claim, supported by Hardman's affidavit and the completed copy in the Loan file, that defendants received a completed copy of the Notice. Plaintiffs have therefore failed to create a triable issue of fact whether defendants received a completed copy of the Notice.

Accordingly, defendants' motion for summary judgment is granted as to the issue of statutory damages. In light of this holding, the court need not reach defendants' alternative arguments that the assignment to Provident from Pinnfund was involuntary, or that plaintiff's claim for statutory damages is time-barred.

## IV. Attorneys' fees

Plaintiffs and defendants have each moved for summary judgment on the issue of whether plaintiffs are entitled to attorneys' fees. TILA provides that "in the case of any successful action to enforce the foregoing liability *or* in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court" are available. 15 U.S.C. § 1640(a)(3)(emphasis added). Defendants rely on the Brodo court's finding that in addition to statutory damages, an assignee also cannot be held liable for attorneys' fees under TILA. Several courts in this district, however, have recently held that an assignee may be liable for attorneys' fees if the borrower ultimately prevails on his claim that he is entitled to rescission. See Payton, 2003 WL 22349118, at *8; Fairbanks, 225 F. Supp. 2d at 916-17.

Judge Kennelly found in Fairbanks that "Congress's use of the disjunctive [in § 1640(a)(3)] indicates that liability for attorney's fees, at least, is not limited to actions against the creditor that initiated the loan but rather applies in 'any action' in which a right to rescind exists." 225 F. Supp. 2d at 916-17. In Payton, Judge Holderman followed Judge Kennelly's approach regarding attorneys' fees, and agreed that "'denying a consumer whose demand for rescission was refused by an assignee the ability to recover attorneys' fees upon successful court action to enforce her TILA rights would undermine the policies underlying the TILA and its private enforcement mechanisms.'" 2003 WL 22349118, at *8, quoting Fairbanks, 225 F. Supp. at 917.

14

As discussed above, § 1641(a) limits an assignee's liability to instances where the disclosure violation is apparent on the face of the loan documents except where Congress specifically provides otherwise. Section 1640(a)(3) specifically provides for attorneys' fees against an assignee, without limiting it to facially apparent violations. The court, therefore, agrees with the courts in Payton and Fairbanks that a consumer who takes judicial action to establish a right to rescind can recover attorneys' fees from an assignee, and that to find otherwise would thwart the policy aims of TILA. If plaintiffs here ultimately prevail on their claim that they are entitled to rescind their loan against defendants, plaintiffs may be entitled to recover reasonable attorneys' fees. Accordingly, defendants' motion for summary judgment is denied as to attorneys' fees, and plaintiffs' cross-motion for summary judgement is granted as to attorneys' fees.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted as to statutory damages and Booker Briggs. Defendants' motion for summary judgment is denied as to attorneys' fees and plaintiffs' right to rescind. Plaintiffs' motion for summary judgment is granted as to attorneys' fees. Plaintiffs' motion for summary judgment is denied as to plaintiffs' right to rescind and statutory damages.

**ENTER:** December 21, 2004

Robert W. Gettleman
United States District Judge

15